# UNITED STATES BANKRUPTCY COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re: | : | Chapter 7 |
| | : | |
| WORLEY & OBETZ, INC., *et al.*,[1] | : | Case No. 18-13774 (REF) |
| | : | (Joint Administration Pending) |
| Debtors. | : | **Hearing Date: TBD** |
| | : | **Obj. Deadline: TBD** |

### CHAPTER 7 TRUSTEE'S MOTION FOR ORDER AUTHORIZING AND APPROVING PROCEDURES FOR THE SALE OR ABANDONMENT OF DE MINIMIS ASSETS PURSUANT TO 11 U.S.C. §§ 105, 363 AND 554, AND <u>FED. R. BANKR. P. 6004 AND 6007</u>

Christine C. Shubert (the "<u>Trustee</u>"), the chapter 7 trustee for the estates of Worley & Obetz, Inc., *et al.* (the "<u>Debtors</u>"), respectfully requests entry of an order authorizing and approving procedures for (I) the sale of De Minimis Assets (as defined below) pursuant to 11 U.S.C. §§ 105(a), 363(b) and (f), and Fed. R. Bankr. P. 6004; or (II) the abandonment of any De Minimis Asset pursuant to 11 U.S.C. § 554(a) and Fed. R. Bankr. P. 6007 (the "<u>Motion</u>").  In support of the Motion, the Trustee respectfully states as follows:

## **JURISDICTION**

1. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (O).

2. Venue of this proceeding and this Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

---

[1] The Debtors is these cases, along with the last four digits of their federal tax identification numbers are (i) Worley & Obetz, Inc. (6576) (Case No. 18-13774-REF); (ii) Americomfort, Inc. (7605) (Case No. 18-13775-REF); (iii) Ranck Plumbing Heating & Air Conditioning, Inc. (9625) (Case No. 18-13776-REF); (iv) Amerigreen Energy, Inc. (6284) (Case No. 18-13777-REF); (v) Advance Air, Inc. (8111) (Case No. 18-13778-REF); (vi) Amerigreen Energy Brokers, LLC (2358) (Case No. 18-13779-REF); (vii) Amerigreen Electricity, LLC (8977) (Case No. 18-13780-REF); (viii) Amerigreen Hedging Services, LLC (8549) (Case No. 18-13781-REF); (ix) Amerigreen Lubricants, LLC (7489) (Case No. 18-13782-REF); (x) Amerigreen Natural Gas, LLC (3222) (Case No. 18-13783-REF); and (xi) Amerigreen Propane, LLC (Case No. 18-13784-REF).

3.     The statutory predicate for the relief sought herein are sections 105, 363, and 554 of title 11 of the United States Code (the "Bankruptcy Code") and Rules 6004 and 6007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## BACKGROUND

4.     On June 6, 2018 (the "Petition Date"), the Debtors each filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code.

5.     On the same day, the Office of the United States Trustee appointed the Trustee as chapter 7 trustee, which appointment remains in effect.

6.     On June 11, 2018, the Trustee filed a Motion for entry of an Order Authorizing and Directing the Joint Administration of the Debtors' Chapter 7 Cases pursuant to Fed. R. Bankr. P. 1015(b) (the "Motion for Joint Administration"), therein requesting entry of an order authorizing and directing the joint administration of the Debtors' chapter 7 cases for procedural purposes only under *In re Worley & Obetz, Inc., et al.*, Case No. 18-13774 (REF).

7.     Prior to the Petition Date, as more fully described in the *Chapter 7 Trustee's Motion for Entry of an Order Pursuant to 11 U.S.C. §§ 105(a) and 363(b) Authorizing the Trustee to Use Property of the Estates to Pay Wages, Costs, and Other Post-Petition Operating Expenses Necessary to Preserve and Maintain the Debtors' Assets During the Sale Process* (the "363 Motion"), certain Debtors operated as total energy providers, and provided energy products and services to their commercial and residential clients, including but not limited to, the following:

    a. Fuel, gasoline, biodiesel, heating oil, kerosene, naptha, propane, and other forms of renewable energy;

    b. Electricity and natural gas;

    c. HVAC installation, repair, maintenance, and service; and

      d.    Plumbing system installation, repair and maintenance.

8. Additionally, as more fully described in the 363 Motion, certain Debtors operated as energy wholesalers to retail distributors operating in the Mid-Atlantic and New England markets, and provided certain energy products and services to their retail fuel distributors, fuel stations, commercial clients, and commercial and residential clients of Debtor Worley & Obetz, Inc. ("Debtor W&O"), including but not limited to, the following:

      a.    Ethanol and biodiesel inventory supply and delivery to retail fuel distributors and commercial clients;

      b.    Hedging and marketing services to fuel distributor customers;

      c.    Electricity and natural gas plans to commercial and residential clients;

      d.    Delivery and supply to Debtor W&O commercial and residential customers of Amerigreen fuel, biodiesel, biofuels, petroleum, and diesel fuels; and

      e.    Operate, supply and delivery of Amerigreen energy products to Amerigreen stations.

9. The Debtors' estates have rights, title and interest in and to certain real property, buildings and improvements thereon, office buildings and office space, fuel stations and fuel distribution sites located across the East Region (collectively, the "Office/Fuel Sites").

10. The Debtors' estates own certain inventory, food, perishable agricultural commodities, materials, ingredients, finished goods, and supplies and perishables located in the convenience store at "Molly's Convenience Store and Gas Station" (collectively, the "Goods"). The Debtors' estates also own certain fuel, gasoline, ethanol, biodiesel, heating oil, kerosene, naptha, propane, and other renewable energy inventory located at the Office/Fuel Sites (as defined in the 363 Motion), the Wo-Go Stations (as defined in the 363 Motion), Molly's, and other

locations throughout the East Region (collectively, the "Fuel Inventory"). The Debtors' estates also own certain fixtures, furniture, machinery, equipment and other tangible assets (collectively, the "Equipment") used in the Debtors' business operations, which is presently located at the Debtors' Office/Fuel Sites, the Wo-Go Stations, Molly's, and at other locations throughout the East Region. Furthermore, the Debtors' estates own (i) certain vehicles, trucks, trailers, fuel tankers, and betterments (collectively, the "Vehicles") located at the Office/Fuel Sites and across the East Region; and (ii) fuel storage tanks located at their commercial and residential clients (collectively, the "Tanks"). Lastly, the Debtors own customer lists, supply contracts, goodwill, and other tangible and intangible property (the "Other Assets" and collectively with the Office/Fuel Sites, Goods, Fuel Inventory, Equipment, Vehicles, and Tanks, the "Property")

11.     Since the Trustee's appointment, she has been analyzing the Debtors' Property and assessing the potential to maximize the value of such assets for the benefit of the Debtors' estates. While identifying certain larger Property that may result in significant value for the Debtors' estates, the Trustee has also already identified certain Property that is likely to have only minimal value for the estates.

**RELIEF REQUESTED**

12.     The Trustee is currently in and/or in the process of obtaining possession of numerous assets of the Debtors that may be considered relatively de minimis, obsolete, or burdensome assets of the Debtors. Given the small monetary value of such De Minimis Assets (as defined below) in relation to the magnitude of the Debtors' estates, and considering the relatively high level of carrying costs associated with De Minimis Assets, and the cost of requiring Court approval of every sale or abandonment, it would not be an efficient use of resources to seek Court approval each and every time that the Trustee has an opportunity to sell such De Minimis

4

Assets. In addition, the de minimis value of such assets may further decrease should further time be necessary to seek approval of the sale of the De Minimis Assets.

13. Accordingly, by and through this Motion, the Trustee seeks the Court's authority to implement a global expedited procedure: (A) to effectuate sales of certain obsolete, burdensome, or relatively de minimis Property (each a "De Minimis Asset" and, collectively, the "De Minimis Assets") of the Debtors with a selling price[2] equal to or less than $50,000 in any individual transaction or series of related transactions to a single buyer or group of related buyers, free and clear of all liens, claims, interests and encumbrances (collectively, the "Liens"), with such Liens attaching to the sale proceeds to the same extent, validity, and priority prior to any sale; and (B) to abandon De Minimis Assets to the extent that the estimated cost to conduct a sale of such De Minimis Assets would be greater than the estimated proceeds that would be generated from such sale, therefore making such abandonment in the best interest of the Debtors' estates and their creditors.

### A.     Sale of De Minimis Assets

14. Pursuant to 11 U.S.C. § 363(b), the Trustee proposes to sell each of the De Minimis Assets for the highest and best offer received. If the relief requested is granted by the Court, the Trustee shall utilize the following procedures (the "De Minimis Asset Sale Procedures") with respect to such sales of De Minimis Assets:

    a.    The De Minimis Asset Sale Procedures shall apply only to the sales of De Minimis Assets in any individual transaction or series of related transactions to a single buyer or group of related buyers with an aggregate selling price equal to or less than $50,000;

    b.    The Trustee is authorized to consummate such transaction(s) without further order of the Court if the Trustee determines in the reasonable

---

[2] For purposes of these procedures, the selling price shall refer to the Trustee's estimate of the net proceeds of any sale transaction.

5

        exercise of her business judgment that such sales are in the best interest of the estates, subject to the procedures set forth herein;

c.    Any such transaction(s) shall be free and clear of all Liens pursuant to section 363(f) of the Bankruptcy Code, with such Liens attaching only to the sale proceeds with the same validity, extent and priority as had attached to the De Minimis Assets immediately prior to such sale;

d.    Except as modified by subparagraph (h) below, the Trustee shall give written notice of each proposed sale (a "<u>Sale Notice</u>") to (i) any known affected creditor asserting a Lien on any De Minimis Assets subject to sale; (ii) the United States Trustee; (iii) Fulton Bank and their counsel; (iv) other secured creditors and their counsel, if known; and (v) all parties who have expressed an interest in purchasing such assets; and (vi) all parties requesting notices pursuant to Fed. R. Bankr. P. 2002 who have made a specific request in writing to the Trustee's counsel to receive each Sale Notice (collectively, the "<u>Sale Notice Parties</u>").

e.    The contents of the Sale Notice shall consist of (i) a general description of the De Minimis Assets being sold, (ii) identification of the purchaser of the De Minimis Assets, (iii) the purchase price, (iv) the significant terms of the sale agreement, if any; and (v) any commissions to be paid to third parties who would sell or auction such De Minimis Assets;

f.    If no written objection from any of the Notice Parties is received by the Trustee within seven (7) calendar days after the date of the service of such Sale Notice, then the Trustee is authorized to immediately consummate such sale after entry of an order approving such sale under certification of counsel;

g.    If any of the Notice Parties submits a written objection to any such sale to the Trustee within seven (7) days after the date of service of such Sale Notice, then the relevant De Minimis Asset shall only be sold upon either the consensual resolution of the objection by the parties in question or further order of the Court. If no resolution to the objection is reached, the Trustee will then schedule a hearing to consider the proposed sale of any De Minimis Assets at the next scheduled omnibus hearing;

h.    The Trustee will provide a quarterly written report to the Court, the Notice Parties and those parties requesting notice pursuant to Bankruptcy Rule 2002, beginning with the quarter ending after approval of the De Minimis Asset Sale Procedures and each quarter thereafter, no later than 15 days after the end of each such quarter, concerning any such sales made during the preceding quarter pursuant hereto, including the names of the purchasing parties and the types and amounts of the sales (each, a "<u>Quarterly Report</u>"); and

6

      i.      The Trustee shall provide each purchaser of De Minimis Assets (i) a copy of the order approving this Motion and the De Minimis Asset Sale Procedures and authorizing the sale; and (ii) an executed bill of sale, substantially similar to the Bill of Sale attached hereto as **Exhibit "A"**.

15.    All buyers of De Minimis Assets sold by the Trustee pursuant to the De Minimis Asset Sale Procedures will purchase such assets "as is, where is," without any representations or warranties from the Trustee as to the quality or fitness of such assets for either their intended or any particular purpose.

### B.    Abandonment of De Minimis Assets

16.    To the extent that the estimated cost to conduct a sale of such De Minimis Assets would be greater than the estimated proceeds that would be generated from such sale, the Trustee seeks authority to abandon such De Minimis Assets in accordance with the following procedures (the "De Minimis Asset Abandonment Procedures"):

    a.    The Trustee shall file a written notice of the abandonment (the "Abandonment Notice") with the Court and provide such Abandonment Notice to (i) any known affected creditor asserting a Lien on any De Minimis Assets proposed to be abandoned by the Trustee; (ii) the United States Trustee; and (iii) Fulton Bank and their counsel; (iv) other secured creditors and their counsel, if known; and (v) all parties requesting notices pursuant to Fed. R. Bankr. P. 2002 who have made a specific request in writing to the Trustee's counsel to receive each Abandonment Notice (collectively, the "Abandonment Notice Parties");

    b.    The Abandonment Notice shall contain a general description of the De Minimis Assets to be abandoned and the Trustee's reasons for such abandonment;

    c.    If no written objections from any of the Abandonment Notice Parties are filed with the Court within seven (7) days after the date of service of such Abandonment Notice, then the Trustee is authorized to immediately proceed with the abandonment; and

    d.    If a written objection from any Abandonment Notice Party is filed with the Court within seven (7) calendar days after service of such Abandonment Notice, then the relevant De Minimis Asset shall only be abandoned upon either the consensual resolution of the objection by the parties in question or further order of the Court after notice and a hearing.

**BASIS FOR RELIEF REQUESTED**

**A.  The De Minimis Asset Sale Procedures and the Sale of De Minimis Assets Are Appropriate Under Section 363(b).**

17.    Section 363(b)(1) of the Bankruptcy Code provides that "[t]he trustee, after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Whether a sale of assets pursuant to § 363(b)(1) of the Bankruptcy Code should be approved in a particular case is a matter left to the Court's discretion, giving due consideration to the sound business judgment of the proponent of the sale. See Myers v. Martin (In re Martin), 91 F.3d 389, 395 (3d Cir. 1996); In re Abbots Dairies of Pennsylvania, Inc., 788 F.2d 143 (3d Cir. 1986); In re Delaware and Hudson Ry. Co., 124 B.R. 169 (D.Del. 1991) (holding that transactions should be approved under Section 363(b)(1) when: (a) they are supported by the sound business judgment of the debtor's management; (b) interested parties are provided with adequate and reasonable notice; (c) the sale price is fair and reasonable; and (d) the purchaser is acting in good faith).

18.    As set forth above, the De Minimis Assets to be sold are of little value and no use to the Debtors' estates. To defray costs associated with the De Minimis Assets, the Trustee seeks authorization to consummate sales of the De Minimis Assets in accordance with the De Minimis Asset Sale Procedures set forth herein. The Trustee has determined in her sound business judgment that implementing a process to sell the De Minimis Assets will provide the Debtors' estates with the most efficient way of disposing of the De Minimis Assets and thereby maximizing the value of such De Minimis Assets and the return to these estates. Thus, the relief requested herein is in the best interests of the Debtors' estates and their creditors. Moreover, the parties with any interest in the De Minimis Assets are fully protected by the opportunity to object to a proposed De Minimis Asset sale and to obtain a hearing if so desired. Finally, the Trustee submits that the threshold

dollar amount for determining whether the Debtors' assets qualify for De Minimis Asset sales is entirely reasonable.

### B. The De Minimis Asset Sale Procedures and the Sale of De Minimis Assets are Appropriate Under Section 363(f).

19. Pursuant to section 363(f) of the Bankruptcy Code, the Court may authorize the sale of assets free and clear of existing liens, claims and encumbrances if: (a) applicable non-bankruptcy law permits the sale of such property free and clear of such interest; (b) the entity holding the lien, claim or encumbrance consents to the proposed sale; (c) such interest is a lien and the price at which such property is sold is greater than the aggregate value of all liens on such property; (d) such interest is in bona fide dispute; or (e) such entity could be compelled in a legal or equitable proceeding to accept a money satisfaction of such interest.  11 U.S.C. § 363(f).

20. The Trustee proposes to sell the De Minimis Assets in a commercially reasonable manner, and expects that the value of the proceeds from such sales will fairly reflect the value of the property sold.  The Trustee further proposes that any party with a Lien on De Minimis Assets sold pursuant to this Motion shall have a corresponding security interest in the proceeds of such sale.  Moreover, the Trustee proposes that the absence of any objection to the entry of the order approving this Motion, along with the absence of any timely objection under the De Minimis Asset Sale Procedures, in each case following the provision of notice, be deemed "consent" to any sales pursuant to the Order within the meaning of section 363(f)(2) of the Bankruptcy Code.  As such, the requirements of section 363(f) of the Bankruptcy Code would be satisfied for any proposed sales free and clear of Liens.

ACTIVE\58171496.v2-6/12/18

### C. The De Minimis Asset Abandonment Procedures and the Abandonment of De Minimis Assets Are Appropriate Under Section 554(a).

21. Section 554(a) of the Bankruptcy Code provides that "[a]fter notice and a hearing, the trustee may abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate." 11 U.S.C. § 554(a). The right to abandon is unfettered, except under certain circumstances that are inapplicable to the present case. See In re Midlantic Nat'l Bank, 474 U.S. 494, 501 (1986).

22. The Trustee expects to take all reasonable steps to sell the De Minimis Assets, as set forth above. However, the costs associated with the sales of certain De Minimis Assets may exceed the proceeds generated from such sales. The inability to consummate a commercially acceptable sale of certain De Minimis Assets indicates that these De Minimis Assets have no meaningful monetary value to the estates. In fact, the costs of maintaining such De Minimis Assets will likely unnecessarily burden the Debtors' estates.

23. Accordingly, the Trustee contends that the abandonment of certain De Minimis Assets is in the best interests of the Debtors' estates and their creditors because the sale of certain De Minimis Assets would not generate sufficient proceeds to cover the costs to sell certain De Minimis Assets. As a result, the Trustee proposes to abandon certain De Minimis Assets in accordance with the De Minimis Asset Abandonment Procedures set forth herein.

### D. Best Interests of the Debtors' Estates.

24. The Trustee believes that the relief requested herein will assist in the Trustee's efforts to reduce expenses and maximize value for the benefit of the Debtors' estates and their creditors. If the request herein is granted, the Trustee will be able to avoid many of the unnecessary costs associated with retaining, storing, and liquidating certain De Minimis Assets that are of inconsequential value, of no further benefit to the estates, and not necessary for the administration

of these cases. Moreover, the procedures that the Trustee seeks to implement pursuant to this Motion will also reduce the burden on the Court's docket while protecting the interests of all creditors with an interest in the De Minimis Assets through the opportunity to object and obtain a hearing if necessary.

25. After careful analysis, and in the exercise of her business judgment, the Trustee has determined, and respectfully submits, that for all of the foregoing reasons the relief requested in this Motion is in the best interests of the Debtors' estates and their creditors and should be granted.

26. Furthermore, in light of the demonstrable benefits of streamlined procedures to sell or abandon De Minimis Assets, similar procedures have been approved in cases in this and other districts. See In re Advanta Corp., et al., Case No. 09-13931 (KJC) (Bankr. D. Del. Feb. 4, 2010); In re Solyndra LLC, et al., Case No. 11-12799 (MFW) (Bankr. D. Del. Oct. 17, 2011); In re Vion Pharm., Inc., 09-14429 (CSS) (Bankr. D. Del. Feb. 17, 2010); In re Fleming Cos., Inc., et al., Case No. 03-10945 (MFW) (Bankr. D. Del. May 21, 2003); In re Ameriserve Food Distr., Inc., et al., Case No. 00-0358 (PJW) (Bankr. D. Del. June 2, 2000); In re Federal-Mogul Global, Inc., T&N Ltd., et al., 01-10578 (Bankr. D. Del. Feb. 11, 2002); In re Worldcom, Inc., et al., Case No. 02-13533 (AJG) (Bankr. S.D.N.Y. Oct. 22, 2002); In re Kmart Corp., Case No. 02-B02474 (Bankr. N.D. Ill. Aug. 29, 2002); In re Exide Tech., et al., Case No. 02-11125 (KJC) (Bankr. D. Del. May 10, 2002).

**E.   Waiver of Fourteen-Day Stay Period.**

27. The Trustee requests that the Court waive the requirements under Fed. R. Bankr. P. 6004(h), so that the any sale of the De Minimis Assets may close immediately rather than being subject to the fourteen (14)-day waiting period outlined in Fed. R. Bankr. P. 6004(h).

ACTIVE\58171496.v2-6/12/18

28.    Fed. R. Bankr. P. 6004(h) provides that an order authorizing the "use, sale, or lease of property … is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 6004(h).

29.    The purpose of Fed. R. Bankr. P. 6004(h) is to provide sufficient time for an objecting party to appeal before an order can be implemented.  See Advisory Committee Notes to Fed. R. Bankr. P. 6004(h).  Although Fed. R. Bankr. P. 6004(h) and the Advisory Committee Notes are silent as to when a court should "order otherwise" and eliminate or reduce the 14-day stay period, COLLIER suggests that the 14-day stay period should be eliminated to allow a sale or other transaction to close immediately "where there has been no objection to the procedure." 10 COLLIER ON BANKRUPTCY, ¶ [6004.11], 6004-18 (Alan N. Resnick & Henry J. Sommer eds., 16th ed.). COLLIER further provides that if an objection is filed and overruled, and the objecting party informs the court of its intent to appeal, the stay may be reduced to the amount of time actually necessary to seek a stay, unless the court determines that the need to proceed sooner outweighs the interests of the objecting party.  Id.

30.    As set forth above, conducting the sales of the De Minimis Assets in accordance with the De Minimis Asset Sale Procedures set forth herein will generate the highest amount of proceeds for the Debtors' estates because the de minimis value of such assets may further decrease should further time be necessary to seek approval of a sale or a delay in the closing of a sale of the De Minimis Assets.  Therefore, the Trustee hereby requests that the Court waive the 14-day stay period under Fed. R. Bankr. P. 6004(h).

## **NOTICE**

31.    This Motion has been provided to: (i) the Office of the United States Trustee for the Eastern District of Pennsylvania, (ii) counsel for the Debtors, (iii) Fulton Bank and their

counsel, (iv) other secured creditors and their counsel, if known, and (v) all parties who have requested notice pursuant to Fed. R. Bankr. P. 2002. The Trustee submits that such notice is proper and adequate and no further notice is necessary or required. The Trustee submits that no other or further notice need be provided.

## CONCLUSION

WHEREFORE, the Trustee respectfully requests that the Court grant the Motion and enter an order, substantially in the form attached hereto:

(a) authorizing the Trustee to effectuate sales of De Minimis Assets free and clear of all Liens without further order of the Court pursuant to the procedures set forth in this Motion;

(b) authorizing the Trustee to abandon De Minimis Assets without further order of the Court pursuant to the procedures set forth in this Motion;

(c) authorizing the Trustee to consummate all transactions related to the foregoing;

(d) waiving the fourteen (14) day stay provided for in Bankruptcy Rule 6004(h); and

(e) granting the Trustee such other and further relief as is just and proper.

Respectfully submitted,

**FOX ROTHSCHILD LLP**

By: */s/ Michael G. Menkowitz*

Michael G. Menkowitz, Esquire
Jason C. Manfrey, Esquire
Jesse Harris, Esquire
2000 Market Street, 20th Floor
Philadelphia, PA 19103-3222
Phone (215) 299-2000/Fax (215) 299-2150
mmenkowitz@foxrothschild.com
jmanfrey@foxrothschild.com
jesseharris@foxrothschild.com

*Proposed counsel for Christine C. Shubert, Chapter 7 Trustee for the Debtors*

Dated: June 12, 2018

13

ACTIVE\58171496.v2-6/12/18